IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ADRIAN THOMAS, N95415,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) Case No. 24-cv-2018-DWD |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| **ANGELA CRAIN,** | ) |
| **ANTHONY WILLS,** | ) |
| **KELLY PIERCE,** | ) |
| **ADEWALE KUFORIJI,** | ) |
| **L. HAMBY,** | ) |
| **JANE DOE 1,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Adrian Thomas, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Western Illinois Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 1). Plaintiff's complaint concerns the delayed response to an infection in June of 2022. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. §

1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In early 2022, Plaintiff began to experience severe stomach pain, a burning sensation in his genitals and blood in his urine. (Doc. 1 at 4). On or around June 16, 2022, he informed several nurses of his symptoms. On June 20, 2022, Jane Doe 1 (a nurse) evaluated Plaintiff at sick call. Plaintiff alleges that she documented abnormal vital signs, difficulty "voiding," back pain, abnormal findings from a urine dipstick, and symptoms with a duration of more than 36 hours. (Doc. 1 at 4). Jane Doe 1 also made a doctor's referral for suspected gonorrhea, chlamydia or syphilis. (Doc. 1 at 4). Jane Doe 1 allegedly told Plaintiff to stop sticking his genitals in cracks in the wall and prescribed him three days of acetaminophen, but nothing for the infection.

Plaintiff alleges that his symptoms worsened, and with each passing day he informed nurses about his situation. (Doc. 1 a 4). On or around June 24, 2022, Plaintiff saw Defendant L. Hamby (a nurse) during medication rounds in his gallery. He stopped Hamby and explained his situation. He claims Hamby was "trying to give [him] a "captula" through his penis, when [he] told her all [he] needed was Flomax and Bactrim to clear the problem." (Doc. 1 at 5). Plaintiff alleges Hamby got angry because he tried to advise her of the treatment he needed, so she then recorded in her notes that he refused treatment. He alleges that Hamby and Defendant Crain both stated in response a grievance that on this occasion Hamby observed him standing at his commode. (Doc. 1 at 5).

On June 24, 2022, he filed an emergency grievance about his situation, and on July 1, 2022, Defendant Warden Wills deemed the grievance an emergency. (Doc. 1 at 5). In the grievance, he explained that he had an infection and that he knew if he was given Flomax and Bactrim his symptoms would resolve. (Doc. 1 at 5). On July 29, 2022, Defendant Kelly Pierce (a grievance officer) denied Plaintiff's grievance as moot. (Doc. 1 at 5).

He subsequently wrote the Administrative Review Board (ARB), but they returned his appeal because he did not include the memorandum a grievance officer had appended to their response. On October 3, 2022, the ARB denied the appeal. (Doc. 1 at 6).

Plaintiff faults all defendants for exhibiting deliberate indifference to his medical situation. He alleges they should be held liable in their individual and official capacities. (Doc. 1 at 6). As to Defendant Wills, he alleges Wills was fully aware of the pain he was experiencing and knew that a delay in treatment would make his condition worse, yet he deliberately disregarded his needs. (Doc. 1 at 6). He then alleges Defendants Crain, Pierce, Adewale Kuforiji (ARB member) L. Hamby and Jane Doe 1 were all aware of his situation and despite his requests for treatment they refused to help. (Doc. 1 at 7). He claims in total that he was knowingly deprived of treatment for eight days. He specifically faults Crain, Hamby, and Jane Doe 1 for willfully failing to exercise the skill and care that a qualified medical professional should have used when presented with his situation. He claims they failed to properly treat his conditions, failed to establish medical safeguards to ensure adequate treatment was not delayed, exhibited deliberate

indifference to his needs and further complicated his situation. (Doc. 1 at 7). He alleges in a single paragraph that Defendant Wexford should be held responsible because they have a widespread practice of understaffing, which causes delays in treatment and promotes harm to inmates. (Doc. 1 at 8).

In support of the complaint, Plaintiff submitted medical records and grievance documentation. The notes from June 20, 2022, indicate that Plaintiff was referred to a doctor. (Doc. 1 at 9). Notes from June 24, 2022, signed by L. Hamby indicate that Plaintiff reported being unable to "void" for four days, and he also reported chills and abdominal pain. (Doc. 1 at 15). He reported pain was at a level ten. Hamby noted that Plaintiff self-reported using Bactrim and Flomax in the past. Hamby indicated he was invited to "come to F.A. for further eval and tx" but Plaintiff refused. (Doc. 1 at 15-16). It was noted that he was referred for a follow-up eval later the same day. (Doc. 1 at 15).

Plaintiff dated his grievance June 24, 2022, though it appears he signed it on June 28, 2022. (Doc. 1 at 10-11). On July 1, 2022, Warden Wills deemed the grievance an emergency. (Doc. 1 at 10). The grievance officer received the grievance on July 7, 2022, and it was reported as forwarded to the health care unit for review. (Doc. 1 at 19). In a memorandum dated July 13, 2022, from Angela Crain to Kelly Pierce, Crain recited information comparable to Plaintiff's allegations about his June 20 and 24, 2022, interactions with L. Hamby and a nurse at sick call (Jane Doe 1). (Doc. 1 at 14). Crain went on to explain that on June 24, 2022, NP Moldenhauer noted that Plaintiff's chart was presented for review. Moldenhauer further indicated, "will give antibiotics (Bactrim) and schedule follow up. Bactrim PO BID x 7 days, follow up MD/NP call line within 2

weeks[.]" (*Id.*). Based on this information Pierce recommended that the grievance be denied as moot, Wills concurred, and the Administrative Review Board ultimately agreed. (Doc. 1 at 19, 20).

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Jane Doe 1 for the treatment she provided on June 20, 2022;**
>
> **Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant Hamby for the treatment she provided at Plaintiff's cell front on June 24, 2022;**
>
> **Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants Crain, Pierce, Wills or Kuforiji for their handling of Plaintiff's grievances about his condition in June of 2022;**
>
> **Claim 4:** ***Monell* claim against Wexford for understaffing Menard's healthcare unit.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

To state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition.

*Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). "Every claim by a prisoner that he has not received adequate medical treatment is not a violation of the Eighth Amendment." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). To determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind. *Id.* at 728. An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness. *Id.* A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir.2010). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

Plaintiff's allegations against Jane Doe 1 are sufficient to proceed at this early juncture, although it is possible these allegations will ultimately fail given the available evidence. Specifically, Plaintiff alleges he saw Jane Doe 1 on or around June 20, 2022, at which time he presented with conditions consistent with a possible urinary infection. Jane Doe 1 gave him ibuprofen and sent him back to his housing area. He contends that this treatment was wholly ineffective and left him to suffer in pain. While this could support a deliberate indifference claim, he attached medical notes from the visit that show Jane Doe 1 also referred him to a doctor based on her observations. (Doc. 1 at 9). This tends to suggest that Jane Doe 1 took all the action she was authorized to take, and that a higher level of care had to come from a doctor or nurse practitioner. Nevertheless, there is no suggestion she expedited Plaintiff's situation, and the course of action she took

did allow him to suffer for 4-8 more days by his own allegations, so at this juncture he may proceed against Jane Doe 1.

Plaintiff attempts to bring a similar claim against Defendant Hamby, a nurse he saw at his cell front around June 24, 2022. Plaintiff again presented to Hamby with symptoms of a possible urinary infection, and he informed her of the medications he usually was prescribed to manage such a situation. He claims Hamby was upset that he tried to demand care and that she then refused assistance. However, as with Jane Doe 1, the records he attached to his complaint tell a slightly different story. *See e.g.*, *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (noting that a plaintiff can plead himself out of court by alleging facts which show he has now claim, and finding that a plaintiff did just that when he submitted a detailed account of the treatment he received over 10 months for an infected cyst that included a few delays while waiting to see a doctor). In the records, Hamby noted that Plaintiff was seen at his cell front around 3:10am, and that she referred him for follow-up later that day with a doctor or nurse practitioner. (Doc. 1 at 15-16). The grievance response from Angela Crain indicated that on June 24, 2022, nurse practitioner Moldenhauer was presented with Plaintiff's chart, and he prescribed antibiotics and scheduled a follow-up appointment. (Doc. 1 at 14). Against this backdrop, Plaintiff cannot maintain a plausible deliberate indifference claim against Defendant Hamby, because at most she did not immediately escort him to a medical provider (it's unlikely any would be at the prison at 3 in the morning) and instead she brought his chart for review by the nurse practitioner within the scope of the same day.

Hamby's action in quickly referring Plaintiff to a provider for antibiotics cannot be considered deliberate indifference, thus, Claim 2 is dismissed without prejudice.

Plaintiff also attempts to fault the Defendants who handled his grievance for deliberate indifference, but this theory fails for multiple reasons. First, the handling of a grievance without personal involvement in an underlying issue is insufficient to support a claim, even if mistakes are made in the grievance processing. *See e.g., Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011)*. As for Defendants Pierce and Kuforiji, the most Plaintiff alleges is that they were responsible for participating in processing the grievance at the prison level or on appeal, but this is not enough to state a claim.

Second, Plaintiff faults Defendant Wills for having knowledge of his issue but failing to intervene or expedite assistance. Claims can sometimes be made against officials for their investigation into a grievance or their failure to exercise their authority to remedy a situation, but the grievance documentation in this case does not sustain a plausible claim of this nature. *See e.g., Perez v. Fenoglio, 792 F.3d 768, 782 (7th Cir. 2015)*. Plaintiff's evidence contradicts the notion that Wills turned a blind eye because Wills expedited his grievance as an emergency and by the time it came back to him for final review the memorandum indicated that Plaintiff had been provided antibiotics and he had been scheduled for a follow-up appointment. Thus, Wills initially acted by expediting the matter for grievance and medical officials, and he subsequently approved of the disposition of the grievance as moot when care had been provided. On this view of events, it is not apparent that Wills was deliberately indifferent or turned a blind eye to a serious issue.

Third, Plaintiff names Defendant Angela Crain, the individual from the medical unit who prepared a memorandum in response to his grievance that documented ongoing care, but he does not explain what Crain did that harmed him. At most, he says Crain prepared the memorandum wherein she stated that he was denied care, but this is not an accurate recitation of the memorandum, because it goes on to say he received care. In sum, there are no plausible allegations that demonstrate Defendants Pierce, Kuforiji, Wills, or Crain were deliberately indifferent to Plaintiff's situation, so Claim 3 will be dismissed without prejudice.

At the end of the complaint, Plaintiff baldly asserts that Defendant Wexford Health Sources, Inc., should be held liable because they understaff Menard, which causes delays in treatment. Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under Monell, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Here, Plaintiff has identified a policy, custom, or practice of understaffing, but he has not demonstrated or even plausibly suggested that understaffing caused any

delays in his own ability to secure treatment for his urinary issues. Thus, Claim 4 is dismissed as insufficiently pled.

### Motion for Recruitment of Counsel (Doc. 3)

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** at this time without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In determining whether to recruit counsel, the Court considers two factors—whether Plaintiff has made reasonable attempts to recruit his own counsel; and whether he is competent to represent his own interests. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff alleges that he attempted to contact at least three lawyers or law firms, but he has not attached proof of his efforts. (Doc. 3 at 1). Even if he had attached proof, the case is still at the earliest phase of the litigation, and he has expressed only generic concerns about his ability to proceed on his own. As such, the Motion is denied without prejudice. If Plaintiff later wishes to renew the motion, he **MUST** include copies of his efforts to seek his own counsel.

### Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendant Jane Doe 1. The Clerk of Court is **DIRECTED** to **ADD** the Warden of Menard in official capacity to assist in identifying Jane Doe 1. To help with this process, **Plaintiff must submit a Notice to the Court within 30 days** giving any information he has about Jane Doe 1 such as her physical appearance, dates on which he interacted with her, and any nicknames she may have. Once the

Warden appears, a schedule will be set for the Warden to review Plaintiff's information, to respond, and for Plaintiff to move to replace Jane Doe 1.

By contrast, **Claims 2-4** are dismissed without prejudice as insufficiently pled, and the Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Wexford Health Sources, Inc., Angela Crain, Anthony Wills, Kelly Pierce, Adewale Kuforiji, and L. Hamby.

The Clerk of Court is **DIRECTED** to prepare for the Warden of Menard (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.  However, the Warden need not file an answer because he or she has been added solely to participate in the identification of Jane Doe 1.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 7 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

As explained above, Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED without prejudice**.  Plaintiff's Motion for Status (Doc. 11) is **GRANTED** by the issuance of this Order.

**IT IS SO ORDERED.**

Dated: October 28, 2024

/s David W. Dugan

---

DAVID W. DUGAN
United States District Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.